UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TONY A. JORDAN,

       Plaintiff,

v.                                    Case No. 8:14-cv-958-T-33TGW

DEFENSE FINANCE AND ACCOUNTING
SERVICES, ET AL.,

       Defendants.
_____/

## ORDER

This matter comes before the Court pursuant to Defendants Defense Finance and Accounting Services (DFAS); Teresa McKay; David McDermott; Audrey Eckhart; Dawn Coulter; Sheila Melton; and John St. Myers' Motion to Dismiss (Doc. # 17) filed on July 11, 2014. *Pro se* Plaintiff Tony A. Jordan filed a response in opposition to the Motion on August 11, 2014. (Doc. # 39). Thereafter, with leave of Court, Defendants filed a reply to Jordan's response on August 25, 2014. (Doc. # 45). For the reasons stated below, the Motion is granted as set forth herein.

## I.   Background

In November of 2003, Jordan, a Lieutenant Colonel in the Army Reserves, was called to active duty and assigned to Central Headquarters at MacDill Air Force Base. (Doc. # 1 at

¶ 20). In January of 2008, DFAS sent a report of possible lodging fraud to the Criminal Investigative Division of the United States Army (CID), which, in February of 2008, commenced an investigation against Jordan. (Id. at ¶¶ 21-22). On July 22, 2008, CID completed its investigation, and compiled evidence that Jordan was paid $99,433.86 while his lodging entitlements totaled $129,405.34. (Id. at ¶ 26). Thereafter, on March 29, 2009, Major General Richard Howe "disposed of the matter administratively," stating that there was no financial gain to Jordan and that he was possibly entitled to more money. (Id. at ¶ 28).

In February of 2009, DFAS sent Jordan notice of its intent to collect $178,122.53 in debt from Jordan for prior overpayment of lodging entitlements. (Id. at ¶ 29). Jordan contacted DFAS in March of 2009, to dispute this alleged debt and was informed that the debt would be suspended while the issue was being reviewed. (Id. at ¶ 30).

In July of 2009, DFAS issued two adjusted debt notices, with a revised notice of intent to collect $106,051.21 from Jordan. (Id. at ¶ 31). In August of 2009, Jordan requested an initial determination from DFAS as to the validity of this debt. (Id. at ¶ 36). In September of 2009, Jordan further requested that he be afforded certain due process rights, the

right to inspect and receive government records related to the matter, the opportunity to review the decision and be provided statutory authority governing the matter, and, if necessary, a final decision by the Defense Office of Hearings and Appeals (DOHA). (Id.). Jordan also requested that all collection activity cease "until such time as [the] entire procedural due process is complete." (Id.).

Collection of Jordan's debt through salary offset began in October of 2009, and remains ongoing. (Id. at ¶ 40). In February of 2010, DFAS forwarded its first initial determination of Jordan's debt and the denial of his claim for revised lodging expense to Jordan and DOHA. (Id. at ¶ 44). Within the determination, DFAS alleged that Jordan had committed the crimes of fraud, wire fraud, making a false statement, and larceny of government funds. (Id.). However, DOHA returned the record to DFAS as incomplete. (Id. at ¶¶ 44-45). As a result, in April of 2010, DFAS sent a second initial determination to Jordan and DOHA in which it alleged that Jordan admitted to committing fraud. (Id. at ¶ 47). However, DOHA advised DFAS that it would not adjudicate Jordan's appeal while an investigation was ongoing. (Id. at ¶¶ 47-48).

In November of 2013, DFAS learned that the

investigations had concluded and sent Jordan a third initial determination denying his requests and advising him to appeal the determination to DOHA. (<u>Id.</u> at ¶¶ 56-57, 63). Jordan sent his appeal to DFAS in December 2013, which DFAS received in January of 2014. (<u>Id.</u> at ¶¶ 59-60). In January of 2014, Jordan received confirmation from DOHA that DFAS had also received his rebuttal, and was notified that DFAS is "currently assembling the case files and will send the complete package to DOHA soon." (<u>Id.</u> at ¶ 63).

Jordan initiated this action against Defendants on April 23, 2014, alleging violations of the Administrative Procedure Act and the Fifth Amendment to the United States Constitution. (<u>See</u> Doc. # 1). On July 11, 2014, Defendants filed the present Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Doc. # 17). Jordan filed a response in opposition to the Motion on August 11, 2014. (Doc. # 39). Thereafter, with leave of Court, Defendants filed a reply to Jordan's response in opposition on August 25, 2014. (Doc. # 45). The Court has reviewed the Motion, the response, and the reply, and is otherwise fully advised in the premises.

## II. <u>Legal Standard</u>

### A. <u>Rule 12(b)(1)- Lack of Subject Matter Jurisdiction</u>

Federal courts are courts of limited jurisdiction. Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001). Motions to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003).

A facial attack on the complaint requires "the court merely to look and see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)(quoting Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)). Factual attacks, in comparison, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings. . . ." Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir. 1999)(quoting Lawrence, 919 F.2d at 1529). When the jurisdictional attack

is factual, the presumption of truthfulness afforded to a plaintiff under Fed. R. Civ. P. 12(b)(6) does not attach. Scarfo, 175 F.3d at 960. Because the very power of the Court to hear the case is at issue, the Court is free to weigh evidence outside the four corners of the complaint. Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 732 (11th Cir. 1982).

### B.    Rule 12(b)(6)- Failure to State a Claim

On a motion to dismiss, this Court accepts as true all of the factual allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

In accordance with <u>Twombly</u>, Federal Rule of Civil Procedure 8(a) calls "for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009)(quoting <u>Twombly</u>, 550 U.S. at 570). A plausible claim for relief must include "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

III. **Analysis**

A. **Individual Defendants**

As an initial matter, the Court notes that in Jordan's response, he states: "Plaintiff is willing to concede that an action against the Defendants in their official capacity is essentially a suit against the agency and does not contest dismissal in that regard." (Doc. # 39 at 31). Therefore, the individually named Defendants – Teresa McKay; David McDermott; Audrey Eckhart; Dawn Coulter; Sheila Melton; and John St. Myers – who have been sued in their official capacity, are hereby dismissed as party Defendants in this action.

## B. <u>Counts I-III</u>

Counts I through III are claims for violation of the Administrative Procedure Act (APA), specifically, 5 U.S.C. § 702, which states:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702.

Jordan takes issue with the procedure, or alleged lack thereof, that he was afforded during DFAS' determination that

Jordan owed a debt and the subsequent debt collection proceedings. (See Doc. # 1 at 19-23). Namely, Jordan suggests that DFAS did not provide Jordan with the requisite 30-days written notice informing him of the nature and amount of his indebtedness, did not indicate DFAS' intention to initiate debt collection proceedings against him, and failed to provide an explanation of his rights during the debt collection process. (Id.). Furthermore, Jordan contends that DFAS did not provide him with an opportunity to inspect and copy the Government records relating to the debt or afford him the opportunity to have a hearing on DFAS' determination concerning the existence of the debt. (Id.).

In addition, Jordan argues that DFAS' July, 2009, letter informing Jordan that the debt had been reduced to $106,051.21 failed to reference any statute, regulation, or policy illustrating that DFAS' actions of reducing the debt were in compliance with current federal laws or DFAS regulations and policies. (Id. at 22). Finally, it is Jordan's position that the findings, conclusions, and actions of DFAS' reviewing officers were incomplete, arbitrary and capricious, or otherwise not in accordance with law. (Id. at 23). Therefore, Jordan argues that "DFAS' failure to follow federal law and its regulations creates a legal wrong. [Jordan] is entitled

to seek review of DFAS' actions under the Administrative Procedure Act, 5 U.S.C. § 702, as well as to enjoin the [D]efendants from any future collection of funds." (Id. at 22). According to Defendants, however, this Court lacks subject matter jurisdiction over Counts I-III.

The APA has waived sovereign immunity, but only for suits that are covered by its provisions. Bowen v. Mass., 487 U.S. 879, 891-92 (1988). The APA "provides for judicial review of federal agency actions and allows federal courts to enjoin authorities of the United States government." Faison v. Duncan, No. 2:11-cv-269-RWS, 2012 WL 1231890, at *2 (N.D. Ga. Apr. 12, 2012)(quoting Citizens for Smart Growth v. Sec'y of Dep't of Transp., 669 F.3d 1203, 1210 (11th Cir. 2012)(citing 5 U.S.C. §§ 701, 702)). Under the APA, a reviewing court "shall . . . hold unlawful and set aside agency action" found to be any of the following:

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

Id. (quoting 5 U.S.C. § 706(2)).

To fall within the purview of the APA, the suit must, among other things, seek "relief other than money damages . . ." and there must be "no other adequate remedy in a court." Christopher Vill., L.P. v. United States, 360 F.3d 1319, 1327 (Fed. Cir. 2004). Stated another way, the APA includes three limitations to its waiver of sovereign immunity: (1) a suit can only seek relief other than money damages; (2) no other adequate remedy can exist in a court; and (3) claims cannot seek relief expressly or impliedly forbidden by another statute. Suburban Mortg. Assocs., Inc. v. United States, 480 F.3d 1116, 1122 (Fed. Cir. 2007).

For the reasons set forth below, this Court finds that it lacks subject matter jurisdiction over Counts I-III.

## 1. **Jordan's Claims Seek Monetary Relief**

To determine whether a suit seeks monetary damages, the Court will review not just the Complaint itself, but also the

essence of the relief Jordan is seeking. (See Doc. # 17 at 6). As articulated by Defendants, "[t]he Federal Circuit has held that a suit seeking a refund or offset is a suit for monetary relief and the APA does not provide jurisdiction for such suits: 'cancellation of debt owed to the federal government . . . is just as much a form of monetary damages for purposes of the Tucker Act as the direct payment by the federal government of conventional monetary damages.'" (Doc. # 17 at 7)(citing Brazos Elec. Power Corp. v. United States, 144 F.3d 784, 787 (Fed. Cir. 1998)).

In Brazos, the plaintiff – Brazos - sought recovery of funds the government applied to a prepayment penalty arising from an agreement between the plaintiff and the government. 144 F.3d at 786. Brazos alleged that the prepayment penalty assessed against it was improper. Id. Brazos filed suit in federal court, and the district court held that it lacked jurisdiction to hear Brazos' claim under the APA, and therefore, the case was transferred to the Court of Federal Claims. Id.

On appeal, Brazos argued that transfer was improper as Brazos characterized its claim as one for the equitable relief of a declaration of rights and an injunction against a federal agency, not a claim for monetary relief. Id.  The Court of

Federal Claims disagreed with Brazos' characterization, explaining:

> The net result of the [agency] being ordered not to classify as a Prepayment Penalty any of the money it received from Texas Utilities would be either the refunding of the Prepayment Penalty to Brazos or the crediting of this money towards Brazos' other debt. Cancellation of debt owed to the federal government under such circumstances is just as much a form of monetary damages for purposes of the Tucker Act as the direct payment by the federal government of conventional monetary damages . . . The substance of Brazos' complaint is money damages from the federal government. In essence, Brazos is seeking a refund of money that it claims was wrongfully paid to the federal government. Whether this money is paid directly to Brazos or whether it is credited towards other money Brazos owes to the federal government is irrelevant to our analysis. Either way, Brazos would be receiving monetary damages from the public fisc of the United States which is the touchstone of Tucker Act jurisdiction.

Id. at 787 (internal citations omitted).

Therefore, the court concluded Brazos' claim was one for monetary relief based on the notion that even though Brazos may not have received any money if it prevailed, any wrongfully paid funds would simply be used by the government to offset Brazos's other debts to the government. Id. As Brazos involved either the offsetting of funds or the direct

payment of money to Brazos, it fell within the Court of Federal Claims' jurisdiction.

Jordan disagrees with the applicability of Brazos to the instant action, and contends that the present action is more analogous to Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Department of Homeland Security, 490 F.3d 940 (Fed. Cir. 2007). In Gonzales, the complaint sought specific performance; namely, the cancellation of an alleged debt for breach of immigration bonds or declaratory and injunctive relief determining that the agency breached the bonds and precluding the government from collecting the debts owed. Id. at 942. The district court determined that it lacked jurisdiction over Gonzales' claims as "the [g]overnment has demonstrated that many . . . of the individual immigration bonds the [g]overnment presently considered breached by [Gonzales] render [Gonzeles] indebted to the [g]overnment in excess of $10,000." Id. at 943.

On appeal, the Court of Federal Claims determined that it lacked jurisdiction as Gonzales was seeking debt cancellation in the "true sense of the phrase - if Gonzales prevails on the merits, any purported bond obligations would be cancelled, no monies would be due to Gonzales either in the form of cash or credit (such as an offset of other debt)."

Id. at 945. "Rather, Gonzales would simply be relieved of any obligation to pay the government under the terms of the immigration bonds." Id.

The Gonzales court further determined that "there is a substantive difference between a plaintiff seeking the return of money it already paid the government and a plaintiff never having to pay the government in the first place. Simply stated, if the plaintiff in the second scenario prevails, he would not 'be receiving monetary damages from the public fisc of the United States.'" Id. (internal citations omitted). Accordingly, Gonzales's debt cancellation claim was not one for monetary relief, and as a result, the Court of Federal Claims did not have jurisdiction. Id. at 946; see Houseal v. McHugh, 962 F. Supp. 2d 286, 294 (D.D.C. 2013)(finding that the complaint did not seek money from the United States; the plaintiff sought only review of an adverse agency action and either a finding that the agency's decision was contrary to law or a remand to the agency for renewed consideration); Remmie v. Mabus, 898 F. Supp. 2d 108, 115–18 (D.D.C. 2012)("Because any financial benefit [p]laintiff might receive is not remotely within the Court's control, [p]laintiff's claim cannot be characterized as a claim for money damages . . . and is not within the scope of the Tucker

Act. As a result, [p]laintiff's claim for injunctive relief plainly fits within this Court's subject-matter jurisdiction.")).

Jordan contends that "[he] does not seek a ruling on entitlements but rather a ruling on the actions of Defendants relating to the unconstitutional takings of a federal employee's current pay and the associated tortious behavior, due process violations and unreasonable delay." (Doc. # 39 at 3). Although Jordan now states, "Plaintiff seeks injunctive, declaratory, and equitable relief for Defendants' defective actions, which are unchallenged and sounding in tort" (Id.), in the "wherefore clause" of the Complaint, Jordan requests that this Court order DFAS to "immediately *refund all monies, with interest, taken improperly from Plaintiff*" (Doc. # 1 at 26)(emphasis added).

Upon review of the Complaint, the Court finds that the relief Jordan requests is that of monetary damages. Specifically, Jordan seeks a refund of money he has paid towards his debt, not debt cancellation, or alternatively, Jordan seeks to offset his debt with the money he could have received had he submitted accurate vouchers in the first place. (See Doc. # 1 at ¶ 74, 26). Unlike in Gonzales, if Jordan is to receive a favorable ruling, he would receive

monetary damages – either by way of a refund or through an offset against other debts owed to the government. The possible relief is not limited to a determination that Jordan never owed a debt in the first place. Therefore, as monetary relief is the primary objective of Counts I-III, these Counts are not within the purview of the APA and instead are within the jurisdiction of the Court of Federal Claims.

### 2. **Jordan Has An Adequate Alternative Remedy**

Defendants argue that Jordan has an adequate alternative remedy available; specifically Jordan can bring a suit under the Tucker Act in the Court of Federal Claims. (Doc. # 17 at 8). The Tucker Act provides the Court of Federal Claims with exclusive jurisdiction for claims against the government seeking money damages in excess of $10,000, not based upon a tort. Suburban Mort. Assocs., Inc., 480 F.3d at 1125-26. According to Defendants, "whether [Jordan] characterizes his claim as a refund or an offset, both fall within the Court of Federal Claims' Tucker Act jurisdiction." (Doc. # 17 at 8).

The Tucker Act sets forth a number of prerequisites for Court of Federal Claims' jurisdiction. These include that the action be "a claim against the United States," that the claim is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or

upon any express or implied contract with the United States,"
and that the damages claim is "not sound[] in tort." See
Bowen, 487 U.S. at 922-23 (The Tucker Act grants the Claims
Court "jurisdiction to render judgment upon any claim against
the United States founded either upon the Constitution, or
any Act of Congress or any regulation of an executive
department, or upon any express or implied contract with the
United States, or for liquidated or unliquidated damages in
cases not sounding in tort.").

Jordan argues, however, that an alternative remedy does
not exist as the Court of Federal Claims does not have
jurisdiction to grant equitable relief or adjudicate his
constitutional claims (Counts IV through VI). (Doc. # 39 at
14).

Jordan correctly states that the Court of Federal Claims
does not have jurisdiction over an action seeking *only*
equitable relief. See Pryor v. United States, 85 Fed. Cl. 97,
103 (Fed. Cl. 2008)(The Court of Federal Claims cannot
adjudicate a complaint that seeks only declaratory relief).
However, "Congress also conferred upon the United States
Court of Federal Claims jurisdiction to afford equitable
relief, but only 'as an incident of and collateral to' a money

judgment." M.E.S., Inc. v. United States, 104 Fed. Cl. 620, 627 (Fed. Cl. 2012).

In this action, Jordan's requests for equitable relief are incidental to the monetary relief he desires. Namely, Jordan requests that this Court enjoin Defendants from seizing any additional funds from Jordan and declare that the internal debt review process that has already occurred was both incomplete and unlawful. (Doc. # 1 at 25-26). In doing so, Jordan further requests an Order from the Court to direct DFAS to immediately refund all monies, with interest, taken improperly from Jordan. (Id. at 26). This Court finds that the primary objective of Jordan's claims is monetary relief, and the equitable relief is requested in order to effectuate the primary objective.

To the extent Jordan argues that the Court of Federal Claims does not have jurisdiction over his constitutional claims, and therefore, its jurisdiction under the Tucker Act is not an adequate remedy, this Court disagrees. "The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim under the Tucker Act, or bar the court from considering the constitutional issue in the course of determining whether the

[agency's conduct] was wrongful." <u>Holley v. United States</u>, 124 F.3d 1462, 1466 (Fed. Cir. 1997).

### 3. <u>Jordan Must Wait For Final Agency Action</u>

Finally, Defendants argue that this Court lacks subject matter jurisdiction over this action as the final agency action remains pending. (Doc. # 17 at 9). Federal jurisdiction is lacking when the administrative action in question is not final within the meaning of 5 U.S.C. § 704. <u>Nat'l Parks Conservation Assoc. v. Norton</u>, 324 F.3d 1229, 1236 (11th Cir. 2003). Agency action is final if: (1) "the action must mark the consummation of the agency's decision making process – it must not be of a merely tentative or interlocutory nature" and (2) the action must be one by which rights or obligations have been determined, or "from which legal consequences will flow." <u>Bennett v. Spear</u>, 520 U.S. 154, 177-78 (1997)(internal citations and quotations omitted).

Here, Defendants argue that "the decision making process is not complete." (Doc. # 17 at 9). "Rather, DFAS's determination that the debt is valid and that [Jordan] is not entitled to the reimbursement sought is tentative pending DOHA's final decision on appeal." (<u>Id.</u>); <u>see</u> 32 C.F.R. pt. 282, App. D(c)("an initial determination . . . is a final

action if the Component does not receive an appeal within 30 days of the date of the initial determination. . . .").

Jordan sent his appeal to DFAS in December of 2013, which DFAS received in January of 2014. (Doc. # 1 at ¶¶ 59-60). In January of 2014, Jordan received confirmation from DOHA that DFAS had also received his rebuttal and that DFAS is "currently assembling the case files and will send the complete package to DOHA soon." (Id. at ¶ 63). Therefore, this Court finds that a final decision has not been rendered on the merits.

Nonetheless, in his response in opposition, Jordan argues that exhaustion is not required. (Doc. # 39 at 17). According to Jordan, "it is well founded that . . . 'failure to exhaust is by no means an automatic bar to judicial review; courts usually look at the purposes of exhaustion and the particular administrative scheme in deciding whether they will hear a case or return it to the agency for further proceeding.'" (Id.)(citing N. L. R. B. v. Indus. Union of Marine & Shipbuilding Workers of Am., AFL-CIO, Local 22, 391 U.S. 418 (1968)).

Jordan suggests that "in making these decisions the [c]ourt utilizes a balancing test which weighs the interests of the Plaintiff against three specified governmental

interests: (a) the agency's interest in having an opportunity to make a factual record and exercise its discretion and expertise without the threat of litigious interruption; (b) the agency's interest in discouraging frequent and deliberate flouting of the administrative process; and (c) the agency's interest in correcting its own mistakes and thereby obviating unnecessary judicial proceedings." (Doc. # 39 at 17)(citing McKart v. United States, 395 U.S. 185 (1969)).

Jordan suggests that "over the past six (6) years, [DFAS] has had more than ample opportunity to make a factual record, with the assistance of two military criminal investigative agencies . . ., and only after enduring more than four (4) years of near silent injustice and a subsequent 163 day delay, did [Jordan] move to impose what could be deemed a litigious interruption." (Doc. # 39 at 18). Second, Jordan posits that "[his] action can no way be construed as an attempt to flout the administrative process, as in both cases that [Jordan] was informed by DFAS both directly and indirectly that there were ongoing investigations, he did not pursue any course of action which could have been viewed as an attempt to either impede or interfere with an ongoing investigation no matter how . . . violative he viewed the process." (Id.). Finally, Jordan suggests that "since contacting [DFAS] senior

management on January 23, 2014, [DFAS'] position remains unchanged, even where [DFAS] concedes in Defendants' motion to dismiss, by not challenging whether [DFAS] procedures were defective, that torts did in fact occur resulting in due process violations, no actions have been taken to correct those defects." (Id.).

Jordan also provides that "Courts have recognized that where a plaintiff's interests are so significant that a failure to exhaust may be excused when there are clear indicia of agency bias or taint." (Id. at 20)(citing McCarthy v. Madigan, 503 U.S. 140 (1992)). According to Jordan, he "is thoroughly convinced that agency bias exists as there are clear indications with the obvious improprieties that exist[] in the processing . . . of claims as they are forwarded to DOHA. Based on Plaintiff's direct knowledge of DOHA and DFAS interactions, it appears that DOHA is merely a proponent of DFAS' ongoing cycle of injustice." (Doc. # 39 at 20).

While this Court acknowledges Jordan's frustration with the actions of DFAS over the past several years, this Court cannot ignore that DFAS and DOHA have specific procedures in place to deal with grievances, such as Jordan's. It is undisputed that Jordan sent his appeal to DFAS in December of 2013, which was subsequently received by DOHA in January of

23

2014.  At this time, DOHA has not rendered a final decision as to Jordan's claims against DFAS' handling of his matter. Therefore, this Court finds that the administrative action is not final.

For the plethora of reasons stated above, this Court finds that it lacks jurisdiction over Counts I through III. Therefore, Defendants' Motion is granted as to Counts I through III.

### C. Count VI

Upon review of the allegations in Count VI of the Complaint, Jordan alleges a "Takings claim" against Defendants. (See Doc. # 1 at 25). Specifically, Jordan contends that he had a property interest in the funds withheld by DFAS, and DFAS was not permitted to take this private property for public use without just compensation. (Id.). However, according to Jordan, DFAS failed to provide him with "formal adjudication in accordance with all lawful provisions and constitutional protections" in order to justify the offset or permit collection of any alleged debt at the time DFAS collected the debt. (Id.). Therefore, Jordan argues that DFAS' actions equate to an unconstitutional taking of private property. (Id.).

According to Defendants, the Tucker Act provides the Court of Federal Claims with exclusive jurisdiction over claims against the government founded upon the Constitution. (Doc. # 17 at 14); see also Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1016-17 (1984) (quoting U.S. v. Causby, 328 U.S. 256, 267 (1946) ("If there is a taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the Court of Claims to hear and determine.")). "The general rule is that whether or not the United States so intended, if there is an alleged taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the Court of Claims to hear and determine." Blanchette v. Conn. Gen. Ins. Corps., 419 U.S. 102 (1974)(internal quotations omitted). Therefore, as Count VI is a Takings claim founded upon the Constitution, it is within the jurisdiction of the Court of Federal Claims. Accordingly, Defendants' Motion is granted as to Count VI.

### D. Remaining Constitutional Claims

The Court notes that "claims of violation of Due Process and Equal Protection rights do not implicate a Constitutional provision which creates a right to the recovery of money damages," and therefore, the Court of Federal Claims lacks subject matter jurisdiction over these actions. Lawrence v.

United States, 69 Fed. Cl. 550, 554 (Fed. Cl. 2006) aff'd, 206 F. App'x 993 (Fed. Cir. 2006). Therefore, this Court will analyze Defendants' Motion as it relates to Counts IV and V under the Fed. R. Civ. P. 12(b)(6) standard.

### 1. Count IV

In his Complaint, Jordan claims a violation of procedural due process rights under the Fifth Amendment. (Doc. # 1 at 24). Specifically, he alleges that he "had a property interest in the funds already withheld by DFAS, and those which were sought to be collected in the future." (Id.). Furthermore, Jordan states that "the internal regulations and policies of DFAS and the statutory provisions that govern debt collection . . . required DFAS to provide procedural due process before any collection of the debt commenced." (Id.). However, according to Jordan, DFAS failed to afford Jordan sufficient or full procedural due process protections, despite his attempt to exercise those protections, and therefore acted unconstitutionally. (Id.).

Defendants argue that Jordan has failed to state a claim establishing his entitlement to relief as Jordan does not have a property interest in erroneous payments. (Doc. # 17 at 10). Therefore, "even assuming DFAS failed to give the appropriate process, DFAS did not violate [Jordan's]

Constitutional rights by collecting the debt because [Jordan] does not have a property interest in the funds DFAS is collecting." (Id. at 11).

In his response, Jordan contests Defendants' position – that Jordan does not have a property interest in money erroneously paid to him. (Doc. # 39 at 25). According to Jordan, he does have a property interest in the funds as Defendants are "illegally collecting through salary offset from [Jordan's] current/disposable pay." (Id.).

To prevail on a procedural due process claim, Plaintiff must establish: (1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation. Bank of Jackson Cnty. v. Cherry, 980 F.2d 1362, 1366 (11th Cir. 1993). The essential elements of procedural due process are notice and an opportunity to be heard before one is deprived of a protected interest. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542-43 (1985).

This Court's initial inquiry therefore is whether Jordan had a property interest in the funds DFAS is collecting upon. Case law provides that a plaintiff has no property interest in keeping erroneous payments to which he is not entitled.

Lawrence, 69 Fed. Cl. at 557. Instead, the Government has the authority to recoup funds that it erroneously paid and is not estopped from doing so by the mistakes of its officers or agents. Id. (citing Aetna Cas. & Sur. Co. v. United States, 526 F.2d 1127 (1975); Bank One, Mich. v. United States, 62 Fed. Cl. 474, 480 (Fed. Cl. 2004) (government has the right to initiate offsets against its debtors)); United States v. Wurts, 303 U.S. 414, 415 (1938)(The government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid. "No statute is necessary to authorize the United States to sue in such a case. The right to sue is not independent of statute."); United States v. Munsey Trust Co. of Washington, D.C., 332 U.S. 234, 239 (1947)("The government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.'").

Therefore, even after liberally construing the Complaint due to Jordan's *pro se* status, this Court finds that Jordan did not have a property interest in the funds DFAS is collecting upon. Therefore, as Jordan has failed to state a claim for which relief can be granted, Defendants' Motion is granted and Count IV is dismissed with prejudice.

## 2. Count V

In Count V of the Complaint, Jordan again argues that he had a property interest in the funds already withheld by DFAs and those which are sought to be collected in the near future. (Doc. # 1 at 24). Further, "[t]he internal regulations and policies of DFAS and the statutory provisions that govern debt collection[,] required DFAS to provide certain substantive due process before any collection of the debt commenced." (Id.). "By failing to follow its own regulations, policies and statutory provisions, DFAS failed to afford [Jordan] sufficient or full substantive due process protection and therefore has acted unconstitutionally." (Id.).

The Due Process Clause of the Fourteenth Amendment provides substantive due process protection. McKinney v. Pate, 20 F.3d 1550, 1555 (11th Cir. 1994). Substantive due process only protects against deprivations of fundamental rights. Greenbriar Vill., L.L.C. v. Mountain Brook, City, 345 F.3d 1258, 1262 (11th Cir. 2003). Fundamental rights are those created by the Constitution. Id. Property interests are not fundamental rights because they are created and defined by an independent source, such as state law. Id.

A substantive due process claim predicated on arbitrary and irrational deprivation of a property interest should be treated as a procedural due process claim. Id. at 1263 n. 4. With respect to deprivations caused by arbitrary and irrational action, due process is satisfied when "proper procedures are employed." Id. at 1263 & n. 4. The proper procedures at issue are the same procedures that are required under the procedural due process claim. Id. Therefore, as Jordan alleges that his "substantive due process" claim arises under a property interest, this Court will consider his arguments under Count IV – procedural due process violation – which this Court has already dismissed. Accordingly, Defendants' Motion is granted as to Count V, and Count V is dismissed with prejudice.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1)   Defendants Defense Finance and Accounting Services; Teresa McKay; David McDermott; Audrey Eckhart; Dawn Coulter; Sheila Melton; and John St. Myers' Motion to Dismiss (Doc. # 17) is **GRANTED.**

(2)   Counts I, II, III, and VI are dismissed as this Court lacks subject matter jurisdiction. Counts IV and V are dismissed with prejudice.

(3)   The Clerk is directed to terminate any pending motions

and thereafter **CLOSE** this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this

5th day of September, 2014.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel and Parties of Record